The next case on the call of the docket is Agenda No. 16, Case No. 127712, Ayesha Chaudhary v. Department of Human Services Mr. David Neweiser Meister Good afternoon, Your Honors, and may it please the Court and Counsel. I am Assistant Attorney General Dave Newmeister on behalf of the Department of Human Services and the Secretary. I plan to focus my comments today primarily on the burden of proof issue, especially as it relates to the administrative code sections that govern the administrative hearing. Because at its heart, this case is simply a statutory construction case. Based on the pertinent sections of the administrative code, where was the burden of proof at any administrative hearing supposed to rest? And the answer is that in this scenario, it rests with the benefit recipient who is challenging the agency's position. Now, there's no dispute here that the administrative code does not directly assign the burden of proof, but the clearest implication comes from two sections of the code. The first one of those is Section 1460, and that provides that if a recipient does not take an appeal, or if for some reason the appeal is taken but does not proceed to a hearing, then the Department can collect its overpayment without producing any evidence. And that's contrary to some other code sections that specifically place the burden of proof on an agency and require what's essentially a prove-up. Counsel, isn't what you just recited, isn't that silent as to burden of proof? Yes, that's correct, Your Honor. It is silent as to burden of proof. I'm arguing that by implication, it implies that the burden of proof would rest with the party challenging the government's position. Because they have to go forward and say they want to challenge it? Well, yes, they have to initially, when the overpayment determination notice is issued, among the information that's provided is the information on how to take an appeal. And if an appeal is taken, and let's just say the appeal for some reason does not proceed to a hearing, even after the appeal has been perfected, the government still, the agency can still then go on to collect the overpayment determination without having to produce any evidence. And that would imply to us that the agency would not have the burden of proof in this case, in a case such as this. Akin to, again, plaintiff in a civil proceeding, suing for civil damages, if you want to go and get a default judgment, you need to go and do a prove-up. Where there's no onus on the department in this case, in a case like this, to produce evidence if the appeal does not go all the way to hearing. But doesn't the administrative code place the burden on the Illinois Department of Human Services to initiate an action to recover overpayment? No, Justice Neville, that's not technically how it works. The Department of Human Services has an internal process by which it identifies a potential overpayment. And that's what happened in this case, when Mr. Romson changed his mailing address. And then the department starts an internal investigation with its Bureau of Collections. It's totally internal. It has not initiated any proceeding at that point, nor does it have to. Once it has gone through its internal processes, by which it identifies a potential overpayment to its satisfaction, it then sends out an overpayment notice, an overpayment determination notice to the subject, the benefit recipient. And there's various kinds of information in that notice. It's a line itemization of all the different overpayments. It's a short statement of the nature of the overpayment and information on how to take an appeal. No proceeding has been initiated at that point. No proceeding is indeed initiated until the benefit recipient, with the determination notice that he or she has received, takes the affirmative step of initiating an administrative appeal. Isn't it a reasonable interpretation of that process that when you notify the recipient of an overpayment, that that's your position, and then they say, I disagree, you need to show or prove that there's been overpayment? Isn't that a logical and reasonable interpretation of that process? Respectfully, no, Justice Holder-White. I don't think that it is. Because at that point, the department has followed its internal procedures that are very well established, and that includes having approved by the USDA from whom federal funding for this comes. They get the internal procedures set up. They issue the overpayment determination notice. And it's then up to the benefit recipient, if he or she disagrees, to decide, do I want to take an appeal? Do I want to bring a case forward and prove that the department is wrong? And there's nothing in the code that suggests that it operates otherwise. Doesn't that seem unfair, though, that you're taking something away that's already been given to a party? I mean, doesn't it make sense for the burden to be on the department to get back money that they've already paid to a party? Not in the instance of an inadvertent overpayment, no. Because this comes in part, Justice Overstreet, from the U.S. Supreme Court case Schaefer that's cited. There's a presumption that if an agency follows its internal procedures, there's a presumption that their determination is correct. And that's where this nice thing that we've labeled the default rule, or the general rule, comes from. That if an agency follows its internal procedures, that its determination has been deemed to be correct. And so if the party wants to challenge that, the party then needs to prove that the department is wrong. And if you want to look at it from the prospect of fairness, which can go into that to some degree, where the fairness aspect would really not come in at the burden of proof stage, because the burden of proof stage is really, in most cases, a creature of the code or statutes, and how that's placed, and how it's determined if it's not placed directly. But the fairness component, to me, Your Honor, would really come into play at the review of the actual evidence of manifest late and preponderance. I'm sorry. Please finish your thought. So in terms of a fairness determination, that, to me, seems to be a point that would come in at the, if we get to that point, well, even before we get to that point, at the weighing of the evidence and considering the evidentiary factors. And at this point, the appellate court seemed to be concerned with fairness in applying their burden of proof analysis. And I think it's more easily dealt with in terms of reviewing the evidence and balancing it on manifest late and preponderance factors. When you were talking about the federal side of things and where they put stuff, am I wrong to think that the Social Security Commissioner bears the burden in federal cases to prove the fact in the amount of overpayment? And the reasoning for that from the federal courts is it makes little sense to allow the commissioner to allege that the claimant has received overpayments and then force the claimant to prove the negative. After all, the commissioner, after discovering an alleged overpayment, is in the best position to demonstrate the amount of the overpayment. That's when the Social Security action is to take over an overpayment. Am I right on that? You've correctly discussed those aspects of those cases, Justice Carter, but let me just elaborate a little bit on that. There are a couple of Social Security cases that are cited in the briefs, Wilkening being one of them. And what Wilkening actually said was, if you want to look at where to allocate the burden of proof, you look at the party who is responsible for creating the situation. I hate to use the term fault, the case uses it, but the party responsible for creating the situation. And in this case, the party responsible for creating the situation was the benefit recipient here, because they had people listing the same mailing address, and as far as the department knew, living at the same address, and they were all supposed to be on one account. And you're trying to take the money away from whom? I really hesitate to use the term take the money away, Your Honor, because let's be clear about one thing here. Okay, so to claim an overpayment, that's against the mother, right? It's against the mother. The preceding, I'm sorry, let me start that sentence over. The overpayment determination notice was sent to the mother as opposed to the father, because the mother was the primary account holder for that address. But, and this next statement I'm going to make is not reflected in our briefs or on the record, but if you'll indulge me, the recipient, Ms. Chodhari, also has the ability to go and try to collect at least part of that overpayment from Mr. Romson, because there is joint and several liability for an overpayment under the regulations. But that wasn't done here. Well, she would never get to that step, because based on the appellate court decision, she was determined to prevail. But the department would not necessarily initiate an action against both of them, because as far as the department's concerned, they're at the same address. She is the lead account holder, so it initiates the action against the lead account holder. Counsel, let me get to my question that I had. You mentioned Schaefer earlier, and of course that case somewhat depended on what was the status quo. Right. Does that come into play here, and what was the status quo in this case? I'd like to answer that in a few different ways, because it's an interesting concept, the status quo. I'm sorry. The status quo here, status quo is a concept that it needs a little bit more definition and certainty, because if we go into this with the idea that the party who bears the burden of proof is the party who is changing the status quo, well, what's the status quo? The status quo could just as easily be construed as the party challenging the government's position, that the agency's position is the status quo, and if you challenge it, you're challenging the status quo. Wouldn't the status quo be whatever the situation was before any conflict was instituted, any claim against one party or the other? Wouldn't that be the status quo? It could be, but having a measuring stick or a rule or a trigger or whatever term we'd like to use, like the party who is challenging the status quo, that really is a concept that it's going to create. It's not easy necessarily to administer at the beginning of an administrative hearing, because there are times when it's going to be contested, and you're going to have the parties arguing before the administrative hearing commences in front of an ALJ of, well, who has the burden of proof? Well, it's the party challenging the status quo. And with the great creativity of the very able council representing a lot of parties in the state, they're going to find ways to argue about it, and it's going to create uncertainty at the administrative hearing stage and difficulty in some instances for the ALJs to apply. And the same reasoning, my same reasoning applies to if we use the term that Ms. Choudhary brought up in her response brief in this court of whether there has been a divestment of a benefit before the administrative hearing takes place. And if I'm slightly mischaracterizing her statement of that, please understand it's not intentional. I don't mean to. But whenever we're dealing with these terms of art and status quo, it's a term of art. And when does a divestment occur? That could be a term of art as well. And we need a situation in front of the ALJs for these administrative hearing processes to run smoothly from the beginning. So you don't have a position on what the status quo was. You're basically asserting that's a measurement we should not consider making. Well, I'll take a position. The status quo is if you are the one challenging the agency's position, then you are the one challenging the status quo. But even if you don't want to view it that sharply, it's still a term of art. If you go one step down from there, it's still a term of art that's capable of argument in different factual scenarios. And it's not going to be clear cut in every case of who's challenging the status quo. And it's going to result in, I was going to say further administrative appeals, but it won't do that. It's going to result in some uncertainty at the administrative hearing stages and more administrative review actions in the circuit court, probably more being taken to the appellate court, and if your honors are willing, probably further opportunities to sort this issue. Despite these dire warnings, there could be two situations, or maybe more. You could get people who've applied for payments for some benefits, and they're denied. And you get those people trying to claim that the department was unfair. They'd be pursuing the persuasion to show that the department was unfair and not factually correct and not providing benefits to them. Then you've got the other situation where the department has provided benefits to someone, and now the department wants to take the benefits away. And that's like this case, right? Yes. So who has the burden of persuasion there? They've already got that. So now you require that the other side has the burden of persuasion to show that they rightfully had the payments. That's what you're arguing, right? Yes, they have the burden of persuasion that they didn't do anything wrong. And in terms of listing addresses or living in one location or another, and by virtue of that, the government's position was wrong. And a lot's been discussed here in terms of the fairness of that scenario, and I'd like to make a couple of comments about that since I'm on the subject. Part of the reason, part of the fairness discussion has revolved around access to evidence in terms of who should have the burden of proof, persuasion of coming forward with this evidence. And in a case like this, I think the evidentiary record illustrates pretty clearly that Ms. Juhari was in a better position to come up with the evidence of where all the relevant individuals lived at the relevant times. She was able to come up with quite a detailed amount of it after the hearing closed. And the ALJ... Who's the one who received the payments that they weren't supposed to receive? The husband, I mean, the father or the mother? They were both receiving payments at the same time on separate accounts. So... And you're claiming that she was the head person on this account. She was. How did the department send two different payments out when there was just one account, the way you're phrasing it, with her name on top? But the payments were going to two different people, right? Mr. Robinson had a separate account. Okay. But he listed the mailing address of the White Oak address, 1433 White Oak Lane, West Chicago. They both listed that as the same mailing address on their separate accounts. And I don't know why it took the next action I'm going to describe for the department to take the next step. But when Mr. Robinson changed his mailing address to something else,  they've been receiving payments, two separate account holders, separate accounts, same address, and that's what caused the department to start its investigation. And what did they do to him when they moved to separate addresses? I don't know. I mean, you're not aware of a separate action against him for reimbursement? For the overpayment? No, I'm not. I'm not aware of anything. The record doesn't tell us. Well, you don't know. I mean, I wonder if it was because of this speculation. She was an easy person to find. She was at the same address. He was gone. Did you stop payments to him? Not that I'm aware of. The payments never stopped. The payments continued. We, the department, just had to take its internal steps to send out an overpayment determination notice of the amounts that had been overpaid. And that's all they were trying to take back is what had been overpaid. And I just want to make sure that everybody understands that there was no attempt here to throw them off the benefit program. Both people were still getting payments. Yes, yes. This was never an eligibility issue of are we going to remove them from the program, because if it were an eligibility issue of the department identifying a potential intentional violation of the rules, then the department would have to initiate the action. And the administrative code at that point makes the department prove, by clear and convincing evidence, that the recipients intentionally violated the rules. And that's why we've got a different situation here, where the code does not specifically assign the burden of proof just to them. Would that be a reason why the department has taken this posture rather than the other posture of going after the person that's there? The burden of proof would be on the department, right? If the department thought it was an intentional violation, yes. But they are not taking that position. They never have. It was just an inadvertent overpayment. And so that's what the department has determined, took the internal steps to initiate the notice, send out the determination. The department's posture is that it was inadvertent that two people were claiming the money. Well, they didn't mean to violate the rules. That's what was inadvertent, is neither Mr. Choudhary nor Mr. Ramzan meant to violate the rules. It was inadvertent on their part. Thank you, Mr. Neumeister. Thank you, Your Honors. Ms. Nelson. Thank you. Good afternoon. My name is Patricia Nelson, and I represent the Plaintiff Appellee, Ms. Aisha Choudhary. May it please the Court. This Court has never addressed the issue of who bears the burden when the department is claiming an overpayment, and the department is urging you to rule that Ms. Choudhary bore that burden, even though the department's own records showed that Mr. Ramzan, her ex-husband, had given the department two different addresses, one his mailing address, which was the same as Ms. Choudhary's, and a separate residential address that was not hers. And also they would like you to rule that she has the burden, even though the department had no evidence from during the overpayment period to show otherwise that he received anything more than mail at her address. Despite them not having any evidence, and there being evidence in the record that the department already knew that her address was his mailing address, they expect Ms. Choudhary, without any notice that she bore the burden of proof, and with no reason to have any special knowledge or experience with the department's regulations, and up against a department employee of 13 years experience to be able to prove that the department's own records were wrong. That prospect is fundamentally unfair and is unsupported by the regulations, the common law, and due process. The regulations themselves are absolutely silent on the issue. And the fact that the department doesn't have to prove the overpayment in a prove-up scenario, if there's no appeal, actually makes complete sense. Because if the drafters of the regulation had intended that the department should not have to prove that an overpayment is valid, then they would have given the department the power to collect the overpayment automatically prior to any kind of appeal. Such as the regulations or the statute did in People v. Orth, where there was an automatic driver's license suspension before there was any kind of an appeal. So the fact that they don't have to do a prove-up does make complete sense. Anything else would be just a complete waste of resources. To require the department to spend their resources to prove up an overpayment, even if there was no appeal, would really have no purpose and just be wasteful. Due process, let me start over again, I'm sorry. The department wants you to rule that their determination should be considered correct if they follow their own procedures. And that an appellant will be able to overturn that determination if they have a legitimate grievance. They get that from Schaefer v. Wiest. But what Schaefer v. Wiest was looking at was a completely different statute with different internal procedures. Namely, three things that are very different from the regulations in the SNAP program. The regulations or the statute in Schaefer talks specifically about a cooperative process between the school board and the parents in coming up with the IEP. It requires that there be very detailed reasons given to the parents on why certain aspects of the IEP are the way that the school board has decided. And most importantly, the statute in that case allowed for attorney's fees for parents if they challenged the IEP and were in fact found to be correct. So all of those are internal procedures that the Schaefer court said, if they're followed, there would be a presumption that the agency's determination was correct. But in this case, you have none of those things. And the proposition that Ms. Chowdhury should bear the burden without any of those kind of procedural protections is really fundamentally unfair. In this case, the department claims that they followed their procedures. And here's what Ms. Chowdhury got. She got a notice of overpayment that alleged she was overpaid because her husband lived with her, even though they had been divorced for 12 years by that point. Twelve might be wrong, so I apologize if that's not correct. Before the morning of the first scheduled hearing, she received a statement of facts. It cites to no department policy and no regulations that they're claiming that she violated that would say why she was being overpaid. And again, it said she's being overpaid because her husband should be on the same account as her. Then she got a pre-hearing meeting at that same first scheduled hearing. And were based on the notice and the statement of facts, she logically provided a letter to the department stating, oh, no, he doesn't live with me, but he uses my address for mail only because he's had difficulty getting his mail at the address where he lives. And her divorce decree, because the notice said husband. So that was the next logical thing that she would do. The department then went back, continued the hearing and did another investigation. And then on the morning of the hearing, for the first time, provided Ms. Trelawary with this additional evidence they have that her ex-husband actually lived with her. And at that hearing, first thing in the morning, is the first time that she hears that she bears the burden of proof. And at the hearing, the department's only evidence that they submitted was from outside the overpayment period. She requested the hearing, though, right? She did request the hearing. So when they went to the first hearing, she gave her information, her letter and her divorce decree to the department and then asked for a continuance. So the matter was then continued. I am not sure if the record is clear that says she asked for the continuance or the department asked for the continuance, because after that, the department was the one who went and did a further investigation. And then on the second date when this information was presented to her, she asked for another continuance. No, she did not. So she didn't ask for a continuance. No, she did not at that point. She went to hearing. She did go to hearing. Based upon the information she had, based on the information they had, I mean, she knew at that point in time the dates that were alleged that her husband was living with her. She knew the facts. She had to refute, correct? She did at that point, but she did not have any opportunity or chance to really take a look at what they were saying was their evidence. And, you know, there's a lot of things, and actually the three pieces of evidence the administrative law judge actually relied on were three pieces of evidence that had come to her only that morning. But she had marshaled a lot of evidence to show that he was not living with her at that time. That evidence that she gave was after the hearing. But the department considered it. The department did not consider it. So the administrative law judge relied on three pieces of evidence. Specifically, a group of documents that the ALJ refers to as secretary of state documents. They are not from during the overpayment period. They contain all sorts of things, some printouts from findlocal.com, some printouts from Facebook. They are definitely not government records. And even anything that was supposedly from the government, from the secretary of state, was not within the overpayment period. The second piece of evidence that the administrative law judge relied on was an address verification for Mr. Ramzan, which was, again, outside of the overpayment period. And Ms. Chaudhary has never contested that he received his mail there. That has been consistent throughout the entire proceeding, from the pre-hearing when she gave the letter, to her testimony, to all of the evidence that she provided after the hearing. She has always maintained that he used her address for mail. So the fact that there's an address verification from outside of the overpayment period, of course there is. The third thing that they relied on were that there were some cars registered, some car registrations to Mr. Ramzan at her address. Again, he used her address for mail. That's not contested. And, again, none of that evidence was from within the overpayment period. And if you look closely at the administrative law judge decision, there is not one mention of Ms. Chaudhary's voluminous evidence that he lived elsewhere. She provided Mr. Ramzan's affidavit that he didn't live there, that he only got his mail there. She provided affidavits from the other people who live in her building, that she lives there only with her children. She provided an affidavit from her landlord that she lives there alone with her children. She provided a copy of his driver's license, which, by the way, showing that he did not have that address on his driver's license. And, by the way, the department also had a copy of his driver's license with that address in their own records. She provided letters from his other daughter's school, utility bills, rent receipts, copies of his leases. I mean, there's not anything more that a person could provide to show that he lived somewhere else. Yet the department completely ignored it. Let me ask you a question. So you're basically arguing at this point that the decision was against the math that's related to evidence. And that's how the appellate court resolved it, right? Yes. At the same time, the appellate court took a position on the burden of proof. I think that no matter which way this court decides to go on the burden of proof, if the burden of proof belonged to Ms. Chaudhary, she met it. There is not one piece of evidence that the department has that is from during the overpayment period or that could even reasonably infer that he lived there during the overpayment period. If we were to agree that the decision was against the math that's related to evidence, do we have to address the burden question? I think that the burden question is extremely important for other SNAP recipients going forward. You know, the counsel talked about in the context of access to the evidence and other SNAP recipients and what they would have, counsel talked about how the department had superior access to the evidence or did not have superior access to the evidence that Ms. Chaudhary actually did. And I think, you know, the department is the one who did the investigation, right? They have their evidence when they send out the notice of overpayment. They have it. And Eastman v. Department of Public Aid already requires that they be able to authenticate it and to put it into evidence. So they are already coming to a hearing, right? They should be coming to a hearing with all of the evidence that they used to conclude that he lived somewhere else and be able to put it into evidence, right? The fact that she was able, Ms. Chaudhary was able to come up with all of that evidence from her ex-husband to show that he lived somewhere else was, I think, extraordinary. And I don't think that's going to be the experience of most SNAP recipients or anybody, really. I mean, the fact that she had the kind of relationship with him that she could ask him to look for documents of where he lived two, three years earlier and that he would actually have them. I mean, who has utility receipts from three years earlier? But he did. So I think that's a very extraordinary circumstance that he was able to provide those things. So while I think, obviously, that whether the burden is on Ms. Chaudhary or not, she met it, I think that where the burden of proof lies in these cases is really important for fundamental fairness and for other SNAP recipients that the department is trying to do this to. Doesn't the statute implicitly allow the department, implicitly indicate that it would be on your client to have the burden of proof? Because the statute allows for the department to set the overpayment, find an overpayment, set the amount, and then notify the person of that, and then it's up to the person to then. I mean, the department doesn't have to go to hearing before that. It doesn't have to offer a hearing before making those findings, but then offer the person the chance to come in and contest that. So I don't think that the next logical conclusion is that if you contest it, you have the burden of proof. What the regulations don't do is allow the department to begin recouping that overpayment, so reducing Ms. Chaudhary's overpayment, just because they made that determination. If the drafters of the regulation had intended that the recipient bear the burden of proof, they would have given the department the ability to begin recouping that immediately, just like in any number of cases that I cited, People v. Orth, that I talked about earlier. There's an automatic driver's license suspension, and that determines who has the status quo, and then when there's appeal, the appellant in that situation is trying to change the status quo, and therefore they bear the burden of proof. So Ms. Chaudhary is – I did want to address a couple of other things. Counsel provides in his reply brief several statements about cases that I have cited to support the proposition that all Illinois cases follow the default rule that the party who wants to change the status quo should bear the burden of proof. I urge you to look very closely at each of those cases that he tries to say doesn't follow that rule. They are described in his brief in a very sort of, for lack of a better word, convoluted way to make it seem like they don't actually follow that rule when every single one of them does. For example, Miller v. Hill is one that he lists that says, the agency rejected the challenge to the zoning board decision because the party challenging the decision did not meet its burden of proof. The opinion doesn't say that anywhere. At issue was Miller's attempt to change a board decision on zoning, therefore Miller was seeking to change the status quo and bore the burden of proof. He also points to Fender v. School District 25 to say the same thing, that there was no actual termination of the teacher prior to the appeal hearing, but there was a suspension. The teacher was suspended. The agency was acting prior to the appeal hearing, and therefore the party or the opponent in that case was the party who bore the burden of proof. But that doesn't mean, so I guess what I want to say is that the Schaefer rule is that the party, the default rule is that the party who wants to change the status quo bears the burden. In this case, it's very clear that Ms. Chowdhury, that the department was wanting to change the status quo. The department initiated the controversy when they decided there was an overpayment and sent out that notice. At that point in time, Ms. Chowdhury was receiving all of her benefits. And only then, when she filed the appeal and it went to hearing, at that point the department is the party seeking to change that. Because if the overpayment is upheld, they get to take some of her benefits away. So they are clearly the party who is trying to change the status quo. I ask, or Ms. Chowdhury asks, that you keep in mind that the issues in this case actually pose real-world consequences, not only for her and her three children, but for everyone who receives SNAP benefits. If the overpayment is upheld, she will be unable to supply her family with the minimum amount of food that is required for survival. The Eighth Circuit in Bleak v. Palmer stated that any recoupment of SNAP benefits to go towards an overpayment would leave the recipient with less than the minimally adequate supply of food. And to rule that Ms. Chowdhury must bear the burden really flies in the face of fairness. Therefore, Ms. Chowdhury is asking this court to reverse the agency decision and uphold the trial court and the appellate court decisions that Ms. Chowdhury was not overpaid and to rule that the department bore the burden of proof. Thank you very much. Thank you, Ms. Nelson. Mr. Newbeiser. Thank you again, Your Honors. A few points to cover. This latest last discussion from Ms. Nelson pointed, I think, to the more appropriateness of considering fairness in the manifest weight of the evidence analysis than at the burden of proof stage for reasons that we've already discussed. But a few comments on the evidence. The department's evidence did show activity for Mr. Ramzan at that address, the White Oak address within the overpayment period. Some of the vehicle records, although they were printed and bore a printout date of after the overpayment period. Mr. Newbeiser, didn't his children live there? Are those his children? My understanding, Chief Justice Burke, is that Ms. Chowdhury's three children lived there. Mr. Ramzan had one child, additional child, from a different marriage that they contend lived elsewhere. But he was the father of the children that lived with the mother, correct? It's my understanding, yes. Yes. So the vehicle records did show sticker renewals, other activity within the overpayment period. The printout date was just after the overpayment period. So there was activity shown at that address from Mr. Ramzan within that period. But when we talk about the ALJ or the department not considering evidence, I think that's a little bit of a misnomer. The record is clear that the ALJ held the record open after the hearing closed so that Ms. Chowdhury could submit some additional evidence, which she did, and which the ALJ took. I think we can presume the ALJ received and considered the evidence. So it's not a question of considering evidence. It's a question of crediting evidence. And the record's pretty clear that the ALJ, who was fully entitled to make credibility determinations, did that here and did not believe some of Ms. Chowdhury's testimony and did not credit some of her evidence because of credibility issues. Not a situation of ignoring it or not considering it, but deciding that she was not credible. And the record's very clear that that's what the decision found, the administrative decision found, that her testimony evidence was not credible, and that's certainly within the ALJ's prerogative to find. That's the ALJ's job. Counsel, wasn't there an abundance of evidence that the father actually had a Morton Road address? From several sources, it looks like. Yes, there was evidence from several sources that he had that address. You're correct. But, again, it's a question of the ALJ has to decide what to believe, what not to believe. There are, and this next statement is not to be taken the wrong way in any respect because there's no evidence of it, and I'll say no more about it, but people list different addresses for different purposes all the time, to do things like get into better school districts, various things, and believe me, I'm not casting an aspersion to say that that was done here. Nothing of the sort. But it's not uncommon for individuals to list different addresses for different purposes. But, counsel, you can't have it both ways, right? I mean, you're saying that this was not anything intentional or willful, but now you're implying perhaps they listed a different address to get over on the department? I have no idea why he listed a different address other than what the record reflects as to the receipt of mail, and I'm not implying anything else. It's just that the ALJ considers all this evidence and makes a determination of what to credit and what not to credit, and one of the mistakes that we contend the appellate court made was not, deference is the right word, but disregarding, really, the ALJ's credibility determinations and making its own. Before I run out of time here, I just want to make sure I come back to this fairness issue and whatever uncertainty the administrative code may have as to where the burden of proof should lie. We are not asking here for anything out of the ordinary, contrary to the way that many state agencies have operated. We're not asking for any type of change in any kind of established law. We're just asking for clarification that the agencies have been doing things right all along, because until this appellate court decision came along, it was never really an issue, and the appellate court came up with this burden of proof analysis based on a case, Eastman, that did not even mention burden of proof. It doesn't contain the phrase, and a change like this that does effectively change the way that agencies conduct their administrative hearings really should be a legislative change where the legislature can hear from different agencies, other stakeholders such as legal service providers like my opposing counsel's organization, and weigh how the burden of proof should be allocated. It should be a legislative change and not adopted rather abruptly by an appellate court case that nobody saw coming and that is based on a case that, again, doesn't even contain the phrase burden of proof. Mr. Neumeister, could it possibly be that the law judge got it wrong in terms of the facts and not the burden of proof? It seems to me that he was weighing the facts. What more could anybody present other than the fact that he admitted having a second address? What's wrong with that? And he wanted to have his ex-wife's address where she was probably home most of the time with some of his children, and he would be visiting his children. And what's out of the ordinary for that that the department wouldn't see? I don't think there's anything out of the ordinary with a situation like that. I think if you're talking about the ALJ's perspective, it really came down to credibility. But if we're suggesting... So what would be the issue with the legislature then? To fix the burden of proof. The legislature knows how to do it. They did it in the situation where the department's trying to prove an intentional violation of the rules so that it can disqualify someone. In that instance, the administrative code says the department must prove intentional breaking of the rules by clear and convincing evidence. Legislature knows how to do it. And if there's a fix needed here, it should be a legislative fix and not the appellate court determination that has really thrown agency law into a bit of disarray. Right now, the burden of proof is by default. The agency just came up with it. Legislature didn't do anything. So by default, there was a... Well, the way the case law has developed, it's been this general rule or default rule that the burden of proof is on the party who initiates the administrative action, as Ms. Chidhari did here, to challenge the agency's position. Has there ever been a case on this kind of procedure that the burden is on the other side, on this kind of case? On a snap overpayment determination case that the burden rests with? No, I've not seen a case... Either way, right? I've not seen a case either way, Justice Carter, that says in a snap overpayment determination case, the burden of proof lies either or. This is a very unusual situation, a very unusual statute, though, because the department can't begin to recoup the losses or the overpayments until after there's a hearing afforded, if it's requested. Well, if a hearing is requested and for some reason doesn't go forward, the recipient doesn't pursue the hearing for whatever reason it may be, then the department collects. Well, the department can't collect if somebody asks for a hearing until there's a hearing. No, that's Section 1460, is if a party doesn't... Well, if they don't take an appeal, then that's an easy question. But if they do take an appeal, and for some reason the appeal is dismissed, not pursued for whatever reason before it would go to hearing, then the department gets to collect. That's the same as not requesting a hearing. If you ask for a hearing, you don't show up, and it doesn't go forward for whatever reason. Okay, yeah. If you request the hearing, you get your hearing before the department can do anything. If for some reason the hearing doesn't go forward and there's no decision, then the department can still collect. Counsel, I have one question, and I know your time is up, but I wanted to ask this question. Would you agree that the appellate court didn't really make a determination as to whether or not the burden had been shifted? Instead, they determined that it was against the manifesto weight of the evidence? I think the appellate court came to both decisions. What was their decision on the shifting of the burden? Well, they determined, yeah, against the manifesto weight. They said that, and they also found that the burden of proof was on the department because I believe their reasoning was that the department was the one trying to change the status quo. That's my understanding of the appellate court's decision. Did they make a determination as to whether or not the burden had been shifted to the recipient? I know they said the burden is on the department, but did they say whether or not it had been shifted to the recipient? No, not in my reading of the appellate court's decision. Thank you. My time is up, and I'll thank you for your time and attention, Your Honors. Thank you. Thank you. Thank you. Thank you. Case number 127712. Ayesha Chandra v. Department of Human Services will be taken under advisement as number 16 on our agenda. Thank you, Counsel Neumeister and Ms. Nelson, for your arguments this afternoon.